UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JAMES STEPHENS, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. H-03-5469 |
| | § | |
| GUY WILLIAMS, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND OPINION**

Pending before this Court are Defendant Sheriff Guy Williams's Amended Motions to Dismiss for Failure to State a Claim. The motions are GRANTED for the reasons given below.

### I. BACKGROUND AND PLEADINGS

Plaintiff sues Guy Williams, the Sheriff of Montgomery County, Texas, in his individual and official capacity. 42 U.S.C. § 1983. Plaintiff is suing Williams and Montgomery County. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991) (a lawsuit against a county official in his official capacity is equivalent to an action against the municipality).

Plaintiff claims as follows in his Complaint and More Definite Statements: Williams was deliberately indifferent to jail inmates' medical care and indifferent to Plaintiff's safety. As the Sheriff of Montgomery County, Williams is personally responsible for the actions and misconduct of his employees.

During his arrest which brought him to the Montgomery County Jail, Plaintiff had

his epileptic-seizure medication on his person. During his confinement in the jail, he had to attend the pill line to receive medication from the jail infirmary. Plaintiff was also taking medication for schizophrenia and participating in a program sponsored by the Tri-County M.H.M.R. in Conroe, Texas. Jail officials were aware that Plaintiff was a seizure patient, but they still assigned him to a top bunk. Subsequently, he had a severe epileptic seizure, passed out, and fell off the top bunk (a fall of approximately 5½ feet to the concrete floor) and split open his chin, broke his jaw, and lost several teeth in the process. He was taken to the jail infirmary in a broken wheel chair.

At the infirmary, an orderly stapled the cut on his chin together without the use of any anesthetic or pain killer. This procedure was very painful without the use of anesthetic. Someone locked him in a room and left him alone. He fell down several times in his room, sustaining more injuries. However, it was some time before he was permitted to see a doctor at the jail. The doctor noted that the right side of his jaw was dislocated and several teeth were broken. The upper-left jaw tooth was broken in half and several lower teeth were also loose and broken. However, he was not permitted to see the dentist because he was indigent, without the necessary funds to pay for dental care. He was removed from his room in the infirmary and taken to a single cell with a top bunk in what is called a 24-hour secure cell (solitary confinement) and reassigned to another cell in solitary confinement with a bottom bunk. He was put in punitive segregation and denied access to a telephone, television, recreation, school, church, alcoholics anonymous, and the law library.

While living in solitary confinement he was unable to eat most foods because his jaw was dislocated and his teeth were broken. Plaintiff pulled one of his broken teeth. Approximately six weeks had passed without necessary emergency dental care. He received some disinfectant from a jail orderly.

The shower button in Plaintiff's housing area became stuck in the on position and

the shower kept running for two days causing the shower to rain down on him, ruining his food, newspapers, and legal material. Because he was unable to eat most foods, he lost approximately 27 pounds. In the first week of November, the dentist pulled Plaintiff's broken teeth, which was about ten weeks after he fell off the top bunk in his cell.

Plaintiff asserts that officials denied him medical and dental care because he was indigent and unable to pay the necessary funds for medical and dental treatment. There is a public notice on the door of the jail infirmary which states "something to the effect that payment for medical and dental services is required in advance of treatment." Sheriff Williams signed the notice. Plaintiff claims that Williams was personally involved in enforcing policies in the jail such that Plaintiff was denied emergency medical treatment and dental care because he was indigent. Plaintiff claims that the County is liable because of its policy of requiring payment for medical and dental care.1 Plaintiff seeks damages, injunctive and declaratory relief, and costs of court.

## II. THE LEGAL STANDARD

Under Fed. R. Civ. P. 12(b)(6), "a claim may not be dismissed unless it appears certain that the plaintiff cannot prove any set of facts in support of her claim which would entitle her to relief." *Benton v. United States*, 960 F.2d 19, 21 (5th Cir. 1992). In a motion to dismiss, the allegations of the complaint must be accepted as true. *Cruz v. Beto*, 405 U.S. 319, 322 (1972).

## III. DEFENDANTS' MOTIONS TO DISMISS

### A. Personal Capacity Claims

A supervisory official may not be held liable under § 1983 based on vicarious liability or a *respondeat superior* theory. *See Reimer v. Smith*, 663 F.2d 1316, 1323

(5th Cir.1981). However, a sheriff can be held liable for his own failure to supervise or train his staff. *See Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983). A supervisory defendant must be either personally involved in the incidents underlying the claim "or there must be a causal connection between an act of the [supervisor] and the constitutional violation sought to be redressed." *Harvey v. Andrist*, 754 F.2d 569, 572 (5th Cir.1985) (citations omitted); *also see Hinshaw v. Doffer*, 785 F.2d 1260, 1263 (5th Cir. 1986) (usually a failure to supervise imposes 1983 liability only where there is a history of widespread deprivations).

In the personal capacity section of his motion to dismiss, Williams points out that Plaintiff states he is suing him under a theory of supervisory liability. Williams argues that Plaintiff has made no allegations showing that Williams was personally involved in any incidents or deprivations alleged by Plaintiff. In response to Defendant's motions, Plaintiff asserts as follows: This lawsuit is based on a denial of medical and dental care because he was indigent. After he fell from his bunk, he was denied "emergency transport to the hospital and dental care." *See* Docket Entry No. 34, p. 2. Plaintiff repeats that his is suing Williams "under essentially a theory of supervisory liability." Plaintiff asserts that, as he had previously claimed, a public notice signed by Williams was posted on the jail infirmary door "stating something to the effect that payment for medical and dental services is required in advance of treatment." Plaintiff contends that under the posted policy he was not provided medical or dental care, even emergency medical care, because he was indigent and unable to pay for any care. Thus, Plaintiff alleges personal involvement by Williams in that he claims Williams signed the written policy statement.

Williams asserts that Plaintiff's pleadings show that the jail provided medical and dental care to Plaintiff, although not to his liking. *See* [First] More Definite Statement, (Docket Entry No. 8), pp. 5-6, ¶ 13; p. 7, ¶ 14; p. 8, ¶¶ 15-16; p. 9, ¶ 18; p. 10, ¶ 21.

Thus, Williams maintains that Plaintiff was not denied medical or dental care because he could not pay for it. Plaintiff vehemently contends that this medical and dental care was inadequate. However, that some care provided was allegedly deficient or inadequate does not change the fact that Plaintiff was not denied medical treatment based on the jail policy on which Plaintiff relies. Plaintiff's allegations show that Williams was personally involved in promulgating the jail policy Plaintiff advances. However, his declarations do not show that he suffered a constitutional deprivation caused by that policy, although he alleges the care was deficient.

As a separate matter, Plaintiff has not alleged any facts which show that the policy he cites constitutes a policy that Montgomery County Jail inmates are not provided medical care unless they are able to pay for it. Under the wording of the policy Plaintiff sets forth in his pleadings, a jail inmate who pays for his medical treatment must do so before he receives it rather than after the treatment is provided. However, the policy as declared by Plaintiff does not explicitly state that an inmate who is unable to pay for treatment beforehand will not receive treatment. Only Plaintiff's conclusory allegations show that the jail will not provide a nonpaying inmate medical care because of his inability to pay. Plaintiff has not shown personal involvement by Williams in any of the constitutional violations he alleges.

**B. Official Capacity Claims**

To establish municipal liability under section 1983, a complainant must show that a municipal policy or custom caused the constitutional deprivation. *Monell v. Department of Soc. Servs.*, 436 U.S. 658 (1978). A municipal policy must be a deliberate and conscious choice by a municipality's policymaker. *Rhyne v. Henderson County*, 973 F.2d 386, 392 (5th Cir. 1992) (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989)).

In the official capacity section of the motion to dismiss, Williams asserts that

Plaintiff was not denied medical and dental care, rather he was denied the health care he thought he should have received. Williams cites Plaintiff's pleadings showing that he did receive medical and dental treatment. *See* [First] More Definite Statement, (Docket Entry No. 8), pp. 5-6, ¶ 13; p. 7, ¶ 14; p. 8, ¶¶ 15-16; p. 9, ¶ 18; p. 10, ¶ 21. Again, Plaintiff vehemently contends that this medical and dental care was inadequate. However, even if the care was inadequate, Plaintiff's pleadings show that he received medical and dental treatment, despite his indigency.

None of Plaintiff's allegations suggest any municipal policy or custom that could have caused any of the constitutional violations he asserts, with some exceptions. The only possible connection between any constitutional deprivations alleged by Plaintiff and a Montgomery County policy or custom is the purported policy concerning payment for medical services discussed above. However, Plaintiff's allegations do not show a "deliberate and conscious choice" by Montgomery County to deny medical services to indigent inmates solely because of their inability to pay. As explained above, Plaintiff did receive medical and dental treatment, albeit allegedly inadequate, and Plaintiff's specific allegations only show that the asserted policy requires paying inmates to pay up front.

Plaintiff says in his reply to Defendant's motions that "it is a policy of the Montgomery County Jail to secure payment for medical treatment and dental care prior to treatment." This statement does not show that the jail's policy includes a provision that the jail will deny care to inmates who fail to pay prior to treatment. Plaintiff's non-conclusory allegations do not show that the jail denies medical and dental care to indigent inmates because of their inability to pay.

Plaintiff also says in his reply that the jail's classification system fails to meet the special needs and conditions of disabled inmates. Plaintiff does not explain how the classification system fails these inmates and does not set forth the deficient elements of

the system or what necessary features it lacks. Plaintiff does not allege the existence of a policy, practice, or custom concerning his special needs and conditions. *See Burns v. City of Galveston*, 905 F.2d 100, 102 (5th Cir.1990). Furthermore, he has not shown causation. *See Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 404 (1997) (constitutional liability may be only imposed "where the municipality itself causes the constitutional violation").

Although not raised by the parties, this Court notes that Texas statutory law provides that a county jail prisoner who receives medical services must "pay for such services when rendered." *See* Tex. Code Crim. P. Ann. art. 104.002(d) (West 2004). The portion of the Sheriff's notice cited by Plaintiff is consistent with article 104.002(d). Plaintiff does not purport to have stated the entire contents of the notice. Nothing in 104.002 specifically addresses whether a county jail may deny needed medical care to an indigent inmate because he cannot pay for the medical care. However, no reasonable reading of the statute allows for the interpretation that it authorizes the *denial* of needed medical care to an indigent inmate because he cannot pay. *See, e.g.*, Op. Tex. Att'y Gen. No. DM-413 (1996).2

In any event, Plaintiff has not made any allegations which show that he was denied medical care based on his inability to pay or which show that Williams promulgated or enforced a written or unwritten policy or custom which denied medical care to Plaintiff because he was indigent. This lack of a showing defeats Plaintiff's individual and official capacity claims.

## IV. CONCLUSION

Plaintiff fails to state a claim on which relief may be granted on all claims against Sheriff Williams in his individual and official capacity.

Accordingly, it is ORDERED that Defendant Sheriff Guy Williams's Amended Motions to Dismiss for Failure to State a Claim [Docket Entry Nos. 31, 32] are GRANTED. Plaintiff's Motion for Extension of Time to Submit his Second More Definite Statement [Docket Entry No. 26] is GRANTED to November 5, 2004, the date Plaintiff submitted his Second More Definite Statement. All other pending motions and requests for relief are DENIED.

SIGNED the 9th day of May, 2005.

*David Hittner*
David Hittner
United States District Judge